FILED

OCT 31 2017 PX

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED

OCT 3 1 2017

MICHAEL T. MASON
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

OSCAR MANUEL GASTELUM IRIBE
a/k/a "Manny," and
a/k/a "Musico"

No. 09 CR 672

Violations: Title 21, United States
Code, Sections 846 and 963

SECOND SUPERSEDING
INDICTMENT

UNDER SEAL

JUDGE GUZMAN

MAGISTRATE JUDGE VALDEZ

COUNT ONE

The SPECIAL DECEMBER 2016 GRAND JURY charges:

1.    Beginning no later than in or about February 2007, and continuing until on or about December 1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny,"
a/k/a "Musico,"

defendant herein, did conspire with Arturo Beltran Leyva, Manuel Fernandez Valencia, Pedro Flores, Margarito Flores, and with others known and unknown to the Grand Jury, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

1

*The Participants in the Conspiracy*

2.    It was part of the conspiracy that Arturo Beltran Leyva directed a cocaine and heroin drug trafficking organization in Mexico commonly known to its members and its associates as the "Beltran Leyva Organization," which obtained multi-ton quantities of cocaine and heroin, and smuggled multi-kilogram quantities of cocaine and heroin into the United States from Mexico and elsewhere. Arturo Beltran Leyva was a leader of the Beltran Leyva Organization, and was ultimately responsible for its operation.

3.    It was further part of the conspiracy that defendant GASTELUM IRIBE was associated with the Beltran Leyva Organization, and acted as a logistical coordinator who coordinated deliveries of multi-kilogram quantities of cocaine and heroin into the United States on behalf of Arturo Beltran Leyva and the  Beltran Leyva Organization, and deliveries of millions of dollars of cash narcotics proceeds to Arturo Beltran Leyva and the Beltran Leyva Organization from its customers in the United States.

4.    It was further part of the conspiracy that Manuel Fernandez Valencia was associated with the Beltran Leyva Organization, and acted as a narcotics broker for the Beltran Leyva Organization.   In conjunction with the Beltran Leyva Organization, Fernandez Valencia received deliveries of multi-kilogram quantities of cocaine and heroin in the United States and elsewhere which were distributed in the United States, and subsequently made deliveries of cash to Arturo Beltran Leyva and the Beltran Leyva Organization from the proceeds of cocaine and heroin sold in

2

the United States.

5.     It was further part of the conspiracy that Pedro Flores and Margarito Flores ("the Flores Brothers") and their associates (collectively, "the Flores Crew") operated a wholesale cocaine and heroin distribution organization that distributed thousands of kilograms of cocaine and multi-kilogram quantities of heroin in the Chicago area and elsewhere, supplied in substantial part through a continuing relationship with Arturo Beltran Leyva, GASTELUM IRIBE, and the Beltran Leyva Organization.

*The Operation of the Conspiracy*

6.     At times during the conspiracy, Arturo Beltran Leyva and members of the Beltran Leyva Organization were affiliated with a group of cocaine and heroin trafficking organizations in Mexico commonly known to its members and associates as the Federation.   The Federation was comprised of an alliance of several drug trafficking organizations including, among others, the Beltran Leyva Organization and the Sinaloa Cartel.   In approximately early 2008, a split occurred between the Beltran Leyva Organization and the Sinaloa Cartel.   After this split, the Sinaloa Cartel and the Beltran Leyva Organization became engaged in a violent war in Mexico over various issues, including control of narcotics trafficking routes into the United States, and the loyalty of wholesale narcotics customers.

7.     It was further part of the conspiracy that Arturo Beltran Leyva, GASTELUM IRIBE, and members of the Beltran Leyva Organization arranged for the transportation of multi-ton quantities of cocaine from Central and South

American countries, including Colombia and Panama, to Mexico, and arranged for the transportation of multi-ton quantities of cocaine, generally in shipments of hundreds of kilograms at a time, as well as multi-kilogram shipments of heroin, from Mexico to the United States border, and then into and throughout the United States, using various means, including but not limited to private aircraft, submarines and other submersible and semi-submersible vessels, container ships, go-fast boats, fishing vessels, buses, tractor trailers, and automobiles.

8.     It was further part of the conspiracy that at certain times during the conspiracy, the Flores Crew obtained and distributed from Chicago and elsewhere, on average, approximately 1,500 to 2,000 kilograms of cocaine per month, in addition to multi-kilogram quantities of heroin, and received a substantial portion of that quantity from Arturo Beltran Leyva, GASTELUM IRIBE, and members of the Beltran Leyva Organization.  Beltran Leyva, GASTELUM IRIBE, and members of the Beltran Leyva Organization provided cocaine and heroin to the Flores Crew and others on consignment, without payment at the time of delivery.  Payment was subsequently made by the Flores Crew and others after some or all of the cocaine and heroin was sold to customers of the Flores Crew.

9.     It was further part of the conspiracy that some shipments of narcotics from Beltran Leyva, GASTELUM IRIBE, and additional members of the Beltran Leyva Organization were received by the Flores Crew in the Chicago area; other shipments were received in the Los Angeles, California area and in Mexico.  For shipments received in Los Angeles and Mexico, truck drivers for the Flores Crew

transported the cocaine and heroin to the Chicago area for further distribution. After the narcotics arrived in Chicago, the Flores Crew sold the cocaine and heroin to wholesale customers in the Chicago area, as well as to customers in Detroit, Michigan; Cincinnati, Ohio; Philadelphia, Pennsylvania; Washington, D.C.; New York, New York; Vancouver, British Columbia; Columbus, Ohio; and elsewhere. Wholesale customers in these cities further distributed the cocaine and heroin to other cities, including Milwaukee, Wisconsin.

10.     Among the shipments received from the Beltran Leyva Organization, in approximately May 2007, Pedro Flores and Margarito Flores agreed to purchase between approximately 9 and 11 kilograms of heroin from the Beltran Leyva Organization.   On or about May 13, 2007, law enforcement seized approximately 9 kilograms of heroin in Berwyn, Illinois, before the heroin could be distributed in the Chicago area.   On or about May 13, 2007, law enforcement also seized approximately $1,100,000 in United States currency in Berwyn in the same residence from which the heroin was recovered.

11.     In addition, in or about November 2008, Pedro Flores, Margarito Flores, and Manuel Fernandez Valencia agreed to purchase approximately 1,040 kilograms of cocaine from the Beltran Leyva Organization.   Defendant GASTELUM IRIBE negotiated the terms of this transaction with the Flores Brothers and Fernandez Valencia.   GASTELUM IRIBE then arranged for the cocaine to be successfully transported to the U.S.-Mexico border to be smuggled into the United States for further distribution.   The cocaine was then transported to the Los

Angeles area in multiple shipments. Before the cocaine could be transported to or distributed in the Northern District of Illinois, the cocaine was seized by law enforcement in the Los Angeles area. Specifically, on or about November 15, 2008, law enforcement seized approximately 600 kilograms of cocaine; on or about November 21, 2008, law enforcement seized approximately 290 kilograms of cocaine; and on or about November 30, 2008, law enforcement seized approximately 154 kilograms of cocaine. On or about November 30, 2008, law enforcement also seized approximately $407,547 in United States currency in the same residence from which the approximately 154 kilograms of cocaine were recovered.

12. It was further part of the conspiracy that Arturo Beltran Leyva, GASTELUM IRIBE, and members of the Beltran Leyva Organization regularly received multi-million dollar payments from the Flores Crew after the delivery of cocaine and heroin was made to the Flores Crew. Arturo Beltran Leyva, GASTELUM IRIBE, and members of the Beltran Leyva Organization transported and caused large quantities of narcotics proceeds to be smuggled as bulk cash from the United States to Mexico.

13. It was further part of the conspiracy that defendants used coded language and other means to misrepresent, conceal and hide, and to cause to be misrepresented, concealed and hidden, the drug trafficking activities of the conspiracy, and to avoid detection and apprehension by law enforcement authorities.

14. It was further part of the conspiracy that Arturo Beltran Leyva and members of the Beltran Leyva Organization utilized various means to evade law

6

enforcement and protect their narcotics distribution activities, including bribery of corrupt officials; violence and threats of violence; and intimidation of law enforcement, rival narcotics traffickers, and members of their own drug trafficking organizations.

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## COUNT TWO

The SPECIAL DECEMBER 2016 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference Count One of this indictment as though fully set forth herein.

2.    Beginning no later than in or about February 2007, and continuing until on or about December 1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny,"
a/k/a "Musico,"

defendant  herein, did conspire with Arturo Beltran Leyva, Manuel Fernandez Valencia, Pedro Flores, and Margarito Flores, and with other persons known and unknown to the Grand Jury, to knowingly and intentionally import into the customs territory of the United States from a place outside the United States, namely, Mexico, a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960;

All in violation of Title 21, United States Code, Section 963, and Title 18, United States Code, Section 2.

## **COUNT THREE**

The SPECIAL DECEMBER 2016 GRAND JURY further charges:

On or about November 15, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny,"
a/k/a "Musico,"

defendant herein, did attempt to knowingly and intentionally possess with intent to distribute, and did attempt to cause the possession with intent to distribute, a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## **FORFEITURE ALLEGATION**

The SPECIAL DECEMBER 2016 GRAND JURY alleges:

1.     The allegations of Counts One, Two and Three of this Indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

2.     As a result of his violations of Title 21, United States Code, Sections 846, and 963, as alleged in the foregoing Indictment,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny,"
a/k/a "Musico,"

defendant herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2): (1) any and all property constituting or derived from, any proceeds he obtained, directly or indirectly, as a result of the violations; and (2) any and all of property used, or intended to be used, in any manner or part, to commit or facilitate the commission of the violations.

3.     The interests of the defendant, jointly and severally, subject to forfeiture to the United States, pursuant to Title 21, United States Code, Section 853, include, but are not limited to, approximately $885,000,000.

4.     If any of the forfeitable property described above, as a result of any act or omission by the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

10

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____

FOREPERSON

_____

ACTING UNITED STATES ATTORNEY

11